IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HEATHER LINDSEY and GEREMY K. LOPEZ, individually and as Guardians Ad Litem for RFL, their minor daughter, | CIVIL NO. 11-00713 JMS-KSC |
| | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | |
| vs. | |
| KATHRYN S. MATAYOSHI in her official capacity as State Superintendent, Department of Education; KANU O KA 'AINA NEW CENTURY PUBLIC CHARTER SCHOOL; PAT BERGIN; ALLYSON TAMURA; KEOMAILANI CASE; JOHN and/or DOES 1-20; DOE CORPORATIONS 1-10; DOE NON-PROFIT CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

On November 28, 2011, Plaintiffs Heather Lindsey ("Lindsey") and

Geremy K. Lopez, individually and as guardians ad litem for RFL, their minor

daughter, (collectively, "Plaintiffs"), filed this action against Kathryn S. Matayoshi in her official capacity as State Superintendent, Department of Education ("Matayoshi"); Kanu O Ka 'Aina New Century Public Charter School ("Kanu"); and Pat Bergin ("Bergin"), Allyson Tamura ("Tamura"), and Keomailani Case ("Case") in their official and individual capacities (collectively, "Defendants").[1] RFL was suspended and later expelled from Kanu, a charter school on the Big Island.  Plaintiffs now assert, among other things, that RFL's expulsion violated their due process rights pursuant to the United States and State of Hawaii Constitutions.

Currently before the court is Defendants' Motion for Summary Judgment, in which they argue that Plaintiffs' claims are barred by the Eleventh Amendment and/or fail as a matter of law.  Based on the following, the court finds that Plaintiffs' due process and state law claims for damages are barred by the Eleventh Amendment, and that Plaintiffs' due process claim for injunctive relief fails because Plaintiffs were not deprived of a constitutionally-protected interest. As a result, Defendants' Motion for Summary Judgment is GRANTED on all claims.

---

[1]  On January 11, 2013, the parties stipulated to dismissal of all claims against Defendants Bergin, Tamura, and Case in their individual capacities.  Doc. No. 56.  Thus, claims against these three Defendants remain in their official capacities only.

## II.  BACKGROUND

**A.     Factual Background**

   Plaintiffs enrolled their fourteen-year-old daughter RFL at Kanu for

the 2011-2012 school year.[2]  *See* Doc. No. 61, Defs.' Concise Statement of Facts

("CSF") ¶ 3.[3]  Upon enrollment, RFL and Lindsey received a copy of Kanu's

handbook, which sets forth Kanu's "no tolerance" policy toward bullying, teasing,

taunting, and name calling.  *Id.* ¶¶ 3-5.  The handbook also explained that abusive

language, harassment, cyberbullying, and fighting were prohibited.  *Id.* ¶ 6.  RFL

committed in writing that she would follow Kanu's behavior expectations, and

treat every member of the Kanu "ohana with aloha and respect at all times."  *Id.*

¶ 8.

   In late August 2011, a Kanu staff member met with RFL and Lindsey

regarding several text messages RFL sent to another Kanu student.  *Id.*

¶ 9.  During this meeting, the Kanu staff member reminded RFL that Kanu's rules

---

[2]  During all times relevant to this action, the law applicable to charter schools was found in Hawaii Revised Statutes ("HRS") Chapter 302B.  Effective June 19, 2012, Chapter 302B was repealed and replaced with Chapter 302D.  2012 Haw. Sess. Laws, ch. 130, §§ 2, 16.

  As a charter school, Kanu has been given "the flexibility and independent authority to implement alternative frameworks with regard to curriculum, facilities management, instructional approach, virtual education, length of the school day, week, or year, and personnel management."  HRS § 302 B-1.  Although governed by an autonomous local school board, HRS § 302B-7(c), the Hawaii Department of Education ("DOE") maintains responsibility for providing a free education to all students, including those in a charter school.  HRS § 302B-15.

[3]  Where Plaintiffs do not dispute a particular fact, the court cites directly to Defendants' CSF.

prohibited threatening, bullying or teasing other students through social media.  *Id.* ¶ 10.

On October 18, 2011, RFL got into an altercation at Kanu with a female schoolmate (not the same female involved in the August 2011 email incident).  *Id.* ¶ 11.  Each girl struck the other at least once.  Doc. No. 61-5, Pls.' Resp. to Defs.' First Req. for Admis. ¶ 19.  That day, Kanu administrators met with RFL and Lindsey at which time RFL did not dispute that she fought with the other girl and that such behavior was inappropriate and prohibited by Kanu's rules.  Doc. No. 61, Defs.' CSF ¶ 12.  Kanu administrators instructed both RFL and the other girl not to escalate the dispute by texting or posting on Facebook or other social media and issued two-day suspensions to both girls.  *Id.* ¶ 13.

Despite this warning, within minutes RFL posted comments on her Facebook page regarding the fight and the other girl.  *Id.* ¶ 14.  These posts were in response to inquiries from her friends.  Doc. No. 61-5, Pls.' Resp. to Defs.' First Req. for Admis. ¶ 30.  The posts included the following:  (1) "Talk shit, spit blood BITCH!  Ha, classic;" (2) in response to a question by a Facebook friend about whether there would be a "Round 2," RFL responded "We see ;) haha not in school again, bumbai gta go pull weeds lmao;" (3) "stupid bitches like to tlk shit too much, haha;" and (4) "ill [] be back Friday! and yeah, psh. that dumb bitch aint

done with HER! ahaha."  Doc. No. 61-6, Decl. of Allyson Tamura ¶ 13; Doc. No. 61-9 Defs.' Ex. D; Doc. No. 61-5, Defs.' Ex. I ¶ 31.

The next day, a Kanu administrator met with RFL and Lindsey to discuss the posts, which RFL admitted she had made.  Doc. No. 61, Defs.' CSF ¶¶ 17-18.  During that meeting, the Kanu administrator told RFL and Lindsey that Kanu "did not appear to be a good fit for RFL and that Kanu would assist in transferring RFL to another school of the Lindseys' choosing."  *Id.* ¶ 19.  In response to Lindsey's request that Kanu reconsider this decision, the administrator agreed to take the request under consideration.  *Id.* ¶ 20.

After the October 19 meeting, RFL again posted comments on her Facebook page regarding the other girl, including calling her "a jap."  *Id.* ¶ 21.  On October 20, after reviewing the additional postings, Kanu administrators decided not to reconsider the decision to release RFL from Kanu and called Lindsey to convey this decision.  *Id.* ¶¶ 22-23.  During this conversation, a Kanu administrator discussed several options for continuing RFL's education, including nearby public and private high schools as well as home schooling, and offered to assist in the transition of RFL to the school of Plaintiffs' choice.  *Id.* ¶ 23.

Thereafter, following a request from Lindsey, Kanu's Local School Board ("LSB") called a special meeting on November 2, 2011, during which

5

Plaintiffs discussed their concerns and asked the LSB to overturn Kanu's decision to release RFL from Kanu.  *Id.* ¶ 24.  During this meeting,[4] Plaintiffs did not dispute that RFL had fought with another student and later posted comments about the fight and the student on Facebook.  *Id.* ¶ 25.  Thereafter, the LSB voted to uphold the decision to release RFL from Kanu.  *Id.* ¶ 26.

Kanu administrators repeatedly offered Lindsey assistance in transferring RFL to another school to finish the 2011-12 school year and discussed several options.  *Id.* ¶ 27.  At no time was RFL precluded from transferring to a Hawaii public high school.  *Id.* ¶ 28.  In fact, Plaintiffs were offered the option of enrolling at Honokaa High School, Kealakehe High School or Kohala High School.  *Id.*  Plaintiffs declined to enroll RFL in any of these three public high schools.  *Id.* ¶ 29.

## B.      Procedural Background

On November 28, 2011, Plaintiffs filed their Complaint against Defendants asserting claims for violation of their due process rights pursuant to the United States and Hawaii State Constitutions, violation of Hawaii Administrative

---

[4] The parties dispute whether this was a meeting or hearing.  *Compare* Doc. No. 61, Defs.' CSF ¶ 25 (characterizing it as a hearing), *with* Doc. No. 71, Pls.' CSF ¶ 25 (stating it was not a hearing); *see* Doc. No. 71-5, Pls.' Ex. D, Deposition of Pat Bergin (characterizing this event as both a hearing and a meeting).  Plaintiffs contend that they never received a formal hearing in connection with RFL's expulsion from Kanu. Doc. No. 71, Pls.' CSF ¶ 34; *see* Doc. No. 71-5, Pls.' Ex. D, Deposition of Pat Bergin (conveying details about the nature of the event).

Rules ("HAR"), and intentional and negligent infliction of emotional distress

("IIED" and "NIED," respectively).  Plaintiffs seek injunctive relief and monetary

damages.

On February 15, 2013, Defendants filed their Motion for Summary

Judgment.  Doc. No. 60.  Plaintiffs filed an Opposition on May 3, 2012, Doc. No.

71, and Defendants filed a Reply on May 10, 2012.  Doc. No. 72.  A hearing was

held on May 20, 2013.  Both parties filed supplemental briefs on June 5, 2013.

Doc. Nos. 75 & 76.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of

Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV. <u>DISCUSSION</u>

Defendants seek summary judgment on all claims, contending that Plaintiffs' due process claims are barred by Eleventh Amendment immunity and that Plaintiffs were not deprived of any constitutional rights. Alternatively, Defendants contend that even if Plaintiffs were denied a constitutional right, the process provided was adequate. Finally, Defendants contend that the state law claims fail as a matter of law. The court addresses each argument in turn.

## A.   **Eleventh Amendment Immunity**

### 1.   *Legal Framework*

The doctrine of sovereign immunity applies when claims are asserted against a state in federal court. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Pursuant to the Eleventh Amendment, states cannot be sued in federal court, whether by their own citizens or citizens of another state. *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890). Similarly, a suit for damages against state officials, in their official

capacity, constitutes a suit against the state itself and therefore is barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Although state officials are literally persons, "a suit against a state official is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, [a suit against a state official] is no different from a suit against the State itself." *Id*.

States and state officials may, however, be held to answer for damages in federal court in three limited circumstances: where the state waives its sovereign immunity, where Congress expressly abrogates state sovereign immunity with respect to a particular federal cause of action, and where Congress creates a statutory scheme under which states are the only possible defendants. *Alaska v. EEOC*, 564 F.3d 1062, 1081-82 (9th Cir. 2009); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1991) (noting that Eleventh Amendment immunity is waivable); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Congress may abrogate Eleventh Amendment immunity in certain circumstances).

Further, *Ex parte Young*, 209 U.S. 123, 159-60 (1908), held that the Eleventh Amendment does not bar a suit to enjoin the unconstitutional actions of a

state official.  *Young* held that a state official who acts in violation of federal law, though sued in his or her official capacity, is "stripped of his official or representative character" because "the state has no power to impart to him any immunity from responsibility to the supreme authority of the United States."  *Id.* The Supreme Court has limited the *Young* exception to suits for prospective relief against ongoing violations of federal law.  *Papasan*, 478 U.S. at 277-78.  Thus, relief that "serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment[.]"  *Id.* at 278 (citing *Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977)).

> ### 2.      *Whether Defendants Are State Agencies or State Officials*

Plaintiffs concede that Defendant Matayoshi, as Superintendent of the Department of Education ("DOE"), is a state official, but contend that the remaining Defendants are not state agencies or officials.  Plaintiffs argue that Defendant Kanu is a "privately operated entity," and therefore cannot assert sovereign immunity pursuant to the Eleventh Amendment.  Plaintiffs further contend that Defendants Bergin, Tamura, and Case, officials of Kanu and/or Kanu's LSB, are not state officials and cannot invoke Eleventh Amendment immunity.  Plaintiffs are mistaken.

The Ninth Circuit has set forth five factors to determine whether an

entity is an arm of the state for purposes of Eleventh Amendment immunity:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1989).  These factors are analyzed by looking at how state law treats the entity.  *Id.*; *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997) (stating that the question whether an entity is an arm of the state "can be answered only after considering the provisions of state law that define the agency's character").

As a starting point, Hawaii law governing public charter schools generally identifies them as state entities.  *See* HRS § 302B-1 ("'Charter schools' refers to those public schools holding charters to operate as charter schools[.]"); *see also* HRS § 302B-9(d) (characterizing charter schools as "public schools and entities of the state"); *Waters of Life Local Sch. Bd. v. Charter Sch. Review Panel*, 126 Haw. 183, 189, 268 P.3d 436, 442 (Haw. App. 2011) (finding a charter school's local school board to be an arm of the state because it, along with the charter school, is part of the charter school system which is administratively attached to the DOE, thus entitling it to the "same sovereign immunity available to the State").

Application of the *Mitchell* factors confirms that charter schools are state agencies for purposes of Eleventh Amendment immunity.

The first *Mitchell* factor is the most crucial and has been refined to a determination of whether the state would be legally liable for a judgment against the entity. *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002); *see Regents of the Univ. of Cal.*, 519 U.S. at 431 ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or discharge the liability in the first instance, that is relevant."); *see also Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("The relevant question is whether the state would have a *legal liability* to pay the judgment, not whether the defendant entity would have the *practical ability* to pay it.")

The State of Hawaii is unique -- it vests the state, as opposed to local or county government, with the obligation to educate its populace: "Hawaii is the only state in the nation that has placed the primary responsibility for public education on the state itself.  It does not operate public schools through smaller local districts." *Michael P. v. Dep't of Educ.*, 656 F.3d 1057, 1070 (9th Cir. 2011) (Clifton, J., dissenting).  Pursuant to the Hawaii State Constitution, "[t]he State shall provide for the establishment, support and control of a statewide system of public schools[.]"  Haw. Const. art. 10, § 1.  And "public schools" include "all

13

academic and noncollege type schools established and maintained by the

department and *charter schools* chartered by the board in accordance with law."

HRS § 302A-101 (emphasis added).[5]  Payment of judgments against the public

schools is subject to legislative appropriation.  *See* Haw. Const. art. 7, § 5

("Provision for the control of the rate of expenditures of appropriated state moneys

. . . shall be made by law.  No public money shall be expended except pursuant to

appropriations made by law.").  Each year, the Department of the Attorney General

submits requests for appropriations to the state legislature for money to cover

settlement and judgment debts that the public schools are unable to fund from any

other source.  *See* Doc. No. 75-3, Decl. of Monica T.L. Morris ¶¶ 4-5.  Considering

the structure of Hawaii state charter schools, along with the Constitution and laws

of the state, the court concludes that because charter schools are part of the state's

public school system, legal liability for a judgment against Kanu rests with the

State of Hawaii, regardless of Kanu's ability to pay the judgment.  Accordingly,

the first *Mitchell* factor supports a finding that Kanu is a state entity.

The remaining *Mitchell* factors also support a finding that Kanu is an

---

[5] Charter schools are funded through the DOE in accordance with the funding scheme applied to all other public schools -- they receive a baseline per-pupil allocation, subject to legislative appropriation and reductions imposed by the governor, HRS § 302B-12(a), and are "eligible for all federal financial support to the same extent as all other public schools."  HRS § 302B-12(b).  Charter schools are authorized to generate additional funds and may disperse those funds without state oversight, HRS § 302B-12(b), but may not assess tuition.  HRS § 302B-12(e).

arm of the state.  Plaintiff concedes the second factor -- that Kanu performs a

central governmental function by providing educational services.  As to the third

factor, Hawaii law expressly prohibits charter schools from bringing "suit against

any . . . entity or agency of the State."  HRS § 302B-9(d).  Regarding the fourth

factor, Plaintiff contends that Kanu owns property in its own name, but fails to

provide any evidence to support that contention.  Conversely, Hawaii law provides

that individual public schools lack authority to purchase real property, but the DOE

may acquire facilities for public schools, including land, "with the concurrence of

the director of finance."  HRS § 302A-1506.  Furthermore, if a charter school

dissolves or a charter is revoked, "the State shall have first right, at no cost to the

State, to all the assets and facilities of the charter school[.]"  HRS

§ 302B-14(I).  Thus, the fourth factor supports a finding that Kanu is a state entity.

Finally, as to the fifth factor, Kanu does not appear to have an independent

corporate status.  It is not registered with the Internal Revenue Service as a

501(c)(3) non-profit organization, nor has it filed its own tax return as any other

type of independent entity.  *See* Doc. No. 75-1, Decl. of Taffi Wise ¶¶ 10-11.

Plaintiff relies on *Holz v. Nenana City Public School District*, 347

F.3d 1176 (9th Cir. 2003), and *Eason* in which the Ninth Circuit determined that

school districts in Alaska and Nevada are not arms of the state.  Neither case is

persuasive.  Under Alaska law, because municipalities are responsible for
providing public education, school districts are deemed arms of municipalities
rather than the state.  *Holz*, 347 F.3d at 1187.  Furthermore, Alaska law "explicitly
provides that '[t]he state is not responsible for the debts of a school district.'"  *Id.*
at 1182 (quoting Alaska Stat. § 14.17.900(a)).  And unlike Hawaii's state-wide
educational system, Nevada has multiple, county-governed public school districts,
each of which receives a guaranteed minimum of state funds determined by a per-
pupil calculation and generates additional funds through tax revenues collected at
the local, county level.  *Eason*, 303 F.3d at 1142-43 (citing Nev. Rev. Stat.
§§ 387.121-22, 387.1233).  *Eason* addressed which public entity bears the ultimate
legal liability for public school debt -- the local, county-wide school district or the
State of Nevada.  *Eason* concluded that under Nevada law "it is not necessarily
true that an amount withdrawn from a school district's account in order to pay a
judgment will be replaced with state money."[6]  *Id.*  Ultimately, *Eason* ruled that the
defendants could not "demonstrate that the State of Nevada bears a legal obligation

---

[6] *Eason* compared Nevada law to that of California, explaining that the State of
California "'sets a revenue limit for each school district[.] . . . In short, the state determines the
amount of money that schools districts may spend per pupil and then provides the necessary state
funds.'  By virtue of this revenue limit system, 'state and local revenue is commingled in a single
fund under state control, and local tax revenue lost to a judgment must be supplanted by the
interchangeable state funds already in the district budget.'  Thus, in California, 'any use of the
commingled funds is a use of state funds.'"  *Eason*, 303 F.3d at 1142 (quoting *Belanger v.
Madera Unified Sch. Dist.*, 963 F.2d 248, 252 (9th Cir. 1992) (granting Eleventh Amendment
immunity to California school districts)).

to satisfy any adverse judgment against the District." *Id.*

Under Hawaii law, state funds are similarly distributed among public schools in accordance with a per-pupil calculation,[7] and charter schools are authorized to generate additional funds and may disperse those funds without state oversight.[8]  However, unlike *Eason*, there is no local governmental entity or school district between individual charter schools and the state.  The Hawaii DOE *is* the state.  Defendants provided evidence that when the public schools, which include Kanu, fall short of funds to satisfy legal judgments, the legal responsibility for payment rests with the state, not the LSB.  Moreover, additional statutory provisions governing charter schools further support the conclusion that Hawaii public charter schools are creatures of Hawaii law that are subject to the supervision and control of the state and exist at the discretion of the state.  *See, e.g.*, HRS § 302B-4 (limiting the number of charter schools that may be established each year); HRS § 302B-3 (placing the entity charged with authorizing and evaluating charter schools within the DOE).

Accordingly, the court finds that Defendant Kanu is a state entity and Defendants Matayoshi, Bergin, Tamura and Case, named in their official

---

[7]  *See* HRS 302B-12(a)(2) (applying per-pupil funding scheme in public schools to charter schools).

[8]  *See* HRS 302B-12(b) (providing that "additional funds generated by the local school boards . . . may be expended at the discretion of the local school boards").

capacities, are state officials.

And the state has not waived its immunity.  A state's consent to waive sovereign immunity must be expressed unequivocally.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).  The State of Hawaii has not waived its sovereign immunity for civil rights actions brought in federal court.  *See Linville v. Hawaii*, 874 F. Supp. 1095, 1103 (D. Haw. 1994).  Nor has Congress abrogated sovereign immunity for civil rights claims asserted pursuant to 42 U.S.C. § 1983.  *See Will*, 491 U.S. at 65-66; *see also Sherez v. Haw. Dep't of Educ.*, 396 F. Supp. 2d 1138, 1142-43 (D. Haw. 2005) (dismissing claims against the DOE and against state official in his official capacity based on Eleventh Amendment immunity).

Thus, Eleventh Amendment immunity bars Plaintiffs' due process claims for damages against State Defendants.  The court now turns to the claim for injunctive relief.

**B.    Due Process Claims for Injunctive Relief**

Plaintiffs seek to enjoin Defendants from continuing to deny RFL a free public education without a hearing.  During the hearing on this Motion, Plaintiffs expressed a continuing desire for RFL to return to Kanu.

"A procedural due process claim has two elements: deprivation of a

18

constitutionally-protected liberty or property interest, and denial of adequate procedural protection." *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (citing *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). Defendants argue that neither element of Plaintiffs' due process claim is met because RFL was not denied any protected interest in her public education and in any event, the procedure provided for her expulsion was adequate.

### 1.    *Defendants Did Not Deprive Plaintiffs of a Protected Interest*

In general, Hawaii students have a protected interest in their public education. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Because the State of Hawaii provides schooling for all children between the ages of six and eighteen, *see* HRS § 302A-1132, RFL has a property interest in her education. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (holding that a student has a property interest in her education where Ohio created free education for residents between the ages of five and twenty-one).

Although the Ninth Circuit has not addressed the precise issue

presented in this action, other courts have held that an entitlement to public education does not include the right to attend a particular school. Specifically, "a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitlement to public education." *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 394 (5th Cir. 2011); *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996) (explaining that a student "may not have procedural due process rights to notice and an opportunity to be heard when the sanction imposed is attendance at an alternative school absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school"); *Zamora v. Pomeroy*, 639 F.2d 662, 669-70 (10th Cir. 1981) (determining no due process violation absent a showing that the alternate school was so significantly inferior that it amounted to expulsion from the educational system); *Thorns v. Madison Dist. Pub. Schs.*, 2007 WL 1647889, at *4 (E.D. Mich. June 5, 2007) (determining no deprivation of property interest where students suspended for 180 days were offered transfer to different school with stricter policies).

Additionally, an entitlement to public education does not include the right to a particular kind of education or curriculum. *Nevares v. San Marcos*

*Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997); *Mitchell v. Beaumont Indep. Sch. Dist.*, 2006 WL 2092585, at *9 (E.D. Tex. July 25, 2006) (explaining that a student has no right to direct, control, or determine her curriculum, or to "receive a public education on special terms or conditions designated by herself or her parents").  Nor is a student deprived of an education when attendance at an alternative school is rejected in lieu of suspension.  *Foster v. Tupelo Pub. Sch. Dist.* 569 F. Supp. 2d 667, 675 (N.D. Miss. 2008).

The parties do not dispute that immediately after informing Plaintiffs that RFL would not be permitted to return, Kanu administrators offered assistance in transferring RFL to another school.  Nor do the parties dispute that Kanu administrators continued to offer such assistance.  Plaintiffs were offered the option of transferring RFL to Honokaa, the public high school for her district, or to Kealakehe or Kohala High Schools, the other two public high schools on the Big Island.

Plaintiffs declined transfer to any of the three public high schools offered by Defendants.  And transfer to a different school does not by itself constitute a deprivation of education -- instead, there must be a showing that the alternative school is significantly inferior to Kanu.  But Plaintiffs fail to offer facts to establish a genuine dispute regarding the inferiority of the alternative high

21

schools.  Instead, they offer unsupported allegations: (1) they "were unable to enroll RFL in Honokaa School because of safety considerations due to a prior bullying incident with other students there;" (2) they "declined to enroll RFL at either Kohala High School or Kealakehe High School because of the distances and lengthy travel times to and from those schools;" and (3) "[a]ttendance at any of the three 'local' public schools would have resulted in a vastly different educational experience in much larger classes without the cultural education to which part-Hawaiian RFL was exposed at Kanu."  Doc. No. 71, Pls.' CSF ¶¶ 35-37.

Plaintiffs utterly fail to provide an evidentiary basis to support these allegations.  The sole evidence provided is counsel's declaration containing vague and/or conclusory statements.  *See* Doc. No. 70-1, Decl. of Eric A. Seitz ¶ 9 (vaguely referencing a "'bullying' situation in which [RFL] was victimized at an earlier age by other students who now attend school at Honokaa"); *see also id.* ¶ 10 (stating that "placements [at Kealakehe] or Kohala [] would have required [RFL] to spend between two and three hours each day travelling back and forth to school"); *id.* ¶ 11 (stating that "enrollment of [RFL], who is part-Hawaiian, in any of the three proposed public high schools would have resulted in a vastly different educational experience in much larger classes without any of the cultural values and opportunities available to her at a smaller charter or private school such as

22

Kanu").  This will not suffice.  Rule 56(c)(4) provides that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (rejecting declarations of counsel because counsel "did not have personal knowledge"); *see also Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1024 (N.D. Cal. 2006) (stating that the "matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay").  Counsel's statements are hearsay and obviously are not based on his own "personal knowledge," and therefore, are accorded no weight.  Accordingly, Plaintiffs failed to establish a material issue of fact regarding the inferiority of the three public schools.

Moreover, even if Plaintiffs had provided sufficient evidentiary support for these specific allegations, the allegations do not raise a material issue of fact regarding whether transfer to any of the three public high schools would be significantly inferior to Kanu.  For example, Plaintiffs fail to allege any facts showing that a transfer to Honokaa, even considering a possible safety issue, would be significantly different or inferior to Kanu.  And in any event, even if attending Honokaa was equivalent to a deprivation of education, Plaintiffs were

offered other educational options.

Additionally, Plaintiffs' other reasons for rejecting enrollment at any of the three public high schools -- increased travel time, lack of the Hawaiian cultural values and opportunities provided by Kanu, and increased class size -- do not constitute a material issue of fact.  Plaintiffs do not have a protected interest in the cultural values and opportunities available at Kanu.  *See Nevares*, 111 F.3d at 26-27 (determining that students have no right to a particular kind of education or curriculum).  Nor do they have a protected interest in smaller class sizes or attending a school closer to home.  *See Mitchell*, 2006 WL 2092585, at *9 (explaining that a student has no right to "receive a public education on special terms or conditions designated by herself or her parents").  Plaintiffs merely alleged that two of the proposed high schools were distant, suggesting inconvenience rather than lack of access to an education.

Plaintiffs' rejection of all offered alternative public schools, in lieu of no schooling, does not constitute a deprivation of education.  Accordingly, the court finds that Plaintiffs were not deprived of a constitutionally-protected property interest in public education.  Absent such a deprivation, Plaintiffs were not entitled to any procedural due process protections in connection with RFL's expulsion from Kanu.

### 2.   *State Due Process Claims*

Plaintiffs appear to assert their § 1983 claim for violation of due process pursuant to not only the Constitution of the United States, but also the Hawaii state constitution and HAR.  But to state a due process claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  *Paul v. Davis*, 424 U.S. 693, 700 (1976) (noting that not every state constitutional or regulatory right becomes a constitutional entitlement); *San Bernardino Physicians' Servs. Med. Grp. v. Cnty. of San Bernardino*, 825 F.2d 1404, 1408-09 (9th Cir. 1987) ("[F]ederal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause.") (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Roth*, 408 U.S. at 577)).  Alleging violations of the state constitution, regulations, administrative rules, or other state law is not sufficient to state a claim for relief under § 1983.  *Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007) (noting that "a claim for violation of state law is not cognizable under § 1983"); *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *13 (D. Haw. Apr. 23, 2013) (finding that "§ 1983 claims based on the Hawaii State Constitution fail as a matter of law").

Accordingly, Defendants are entitled to summary judgment on

Plaintiffs' § 1983 due process claims.

## C.    Eleventh Amendment Bars State Law Tort Claims

The Eleventh Amendment bars claims for damages against

Defendants unless the state waives its sovereign immunity. *See Coll. Sav. Bank*,

527 U.S. at 675.  Although Hawaii has waived its sovereign immunity as to some

state tort and statutory claims, it has done so solely with respect to state court

actions.  HRS § 662-3 states that "circuit courts of the State and . . . the state

district courts shall have original jurisdiction of all tort actions on claims against

the state."  HRS § 661-1 similarly grants the state courts jurisdiction over "[a]ll

claims against the State founded upon any statute of the State[.]"  Nothing in the

language of these statutes suggests that Hawaii intended to subject itself to suit in

federal court.

Moreover, the Hawaii Legislature has specifically declared that it

intended §§ 662-3 and 661-1 to extend jurisdiction to state courts, but not to

federal courts.  *See* Act 135 of 1984 Session Laws of Hawaii; *see also Office of*

*Hawaiian Affairs v. Dep't of Educ.*, 951 F. Supp. 1484, 1491 (D. Haw. 1996)

(discussing both plain language and legislative intent and holding that §§ 661-1

and 662-2, which waived the state's immunity for torts committed by its

employees, do not waive the state's Eleventh Amendment immunity).  Defendants

26

are therefore entitled to Eleventh Amendment immunity on these state claims.

## V.  <u>CONCLUSION</u>

As set forth above, the court finds that Plaintiffs' due process and state law claims for damages are barred by the Eleventh Amendment and that Plaintiffs' due process claim for injunctive relief fails because Plaintiffs were not deprived of a constitutionally protected interest.  Defendants' Motion for Summary Judgment is GRANTED on all claims.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 18, 2013.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*Lindsey et al. v. Matayoshi et al.*, Civ. No. 11-00713 JMS-KSC, Order Granting Defendants' Motion for Summary Judgment